IGINIA, The (MULLER v.). See Case No. 9,917.

IGLEHART (BANK OF CIRCLEVILLE v.). See Case No. 860.

IHMSEN (McLEAN v.). See Case No. 8,882.

ILEX, The (PAUL v.). See Case No. 10,842.

---

## Case No. 7,002.

### The ILLINOIS.

[5 Blatchf. 256;[1] 2 Int. Rev. Rec. 77.]

Circuit Court, S. D. New York. Sept. 8, 1865.

COLLISION — STEAMER AND SAILING VESSEL—SIGNAL LIGHTS.

When a steamer discovers the light of an approaching sailing vessel, and then loses sight of it, it is her duty to check her speed, and even to stop, if need be, until she again discovers the light; and, if she fails to do so, she will be held in fault, in case she collides with the sailing vessel.

[Cited in Hoben v. The Westover, 2 Fed. 93; The State of California, 1 C. C. A. 224, 49 Fed. 174.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by the owners of the schooner Statesman, against the steamer Illinois, to recover damages for a collision which occurred between the two vessels, about a quarter or half past eight o'clock p. m., on the 18th of August, 1863, in the Chesapeake Bay, at the mouth of the Potomac river, a little to the northward and eastward of the light ship anchored off Smith's Point on the west side of the bay. The district court decreed for the libellants [case unreported], and the claimants appealed to this court.

Edward H. Owen, for libellants.
Washington Q. Morton, for claimants.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

NELSON, Circuit Justice. The schooner was bound up the bay to Baltimore. The steamer was on her passage from Alexandria, Virginia, to the port of New York, with some 1,300 officers and soldiers on board. The wind was from the east, about east-north-east, blowing three or four knots the hour, with an ebb tide. The schooner was close hauled on her starboard tack, heading northwesterly, about north by west. The case as stated in the libel is, that, when the steamer was first seen, she was heading to the southward, towards the schooner, and struck her starboard bow, carrying away her bowsprit, jibboom, head-gear, and fore-rigging, and drove her bow around, bringing her starboard side against and under the port side of the steamer. The case made in the answer is, that, while the steamer was heading about south-south-east, a light was reported on the port bow, which, as afterwards appeared, was the schooner, and which bore from one and one-half to two points on the port bow of the steamer, the steamer then heading about south-east by south half south; that the steamer's course was then further changed one point, by porting her helm, so that she headed about south by east, and the light opened, so as to bear about three points on the port bow of the steamer; that, after the second porting of the helm, the light disappeared; that, soon after, and while the steamer was proceeding on her course, south by east, the light reappeared, about two points on the port bow, and closing on the steamer; that the steamer's helm was then put hard-a-port, and her engine bells were rung to stop; that the schooner immediately came into view, steering across the bows of the steamer, and heading about west, towards the light ship; and that the schooner's jibboom struck the steamer on her port bow, and the schooner then swung alongside of the steamer and damaged her port wheel.

There were three persons on board of the schooner, Nickerson, the master, Wiley, the mate and wheelsman, and Wilson, the lookout, who were in charge of her navigation, and witnessed the collision, and who concur in saying that when they first discovered the lights of the steamer, their course was north by west, and that it was not changed till the moment of the accident, when the master ordered the wheel to be starboarded, in order to ease the blow. It is also in proof, that the light of the schooner was discovered on board of the steamer in time to have taken a course which would have cleared her; that, afterwards, those on the steamer lost sight of the schooner; and that, when they again discovered her, she was crossing the bows of the steamer, according to the proofs on the part of the steamer. On the part of the schooner the testimony is, that the steamer was then coming into the schooner on her starboard bow.

There is considerable conflict of proofs as to the course of the vessels, but I concur with the court below, that the weight of it is decidedly in favor of the position of the schooner, that, from the time she first discovered the lights of the steamer, the course of the schooner was not changed till the moment of the collision, and then to lessen the effect of the disaster.

The fault of the steamer, and in respect to which there is no dispute as to the fact, was in not checking her speed, and even stopping, if need be, after she lost sight of the lights of the schooner, until she again discovered them. There is no excuse for this neglect. The duty has been repeatedly enjoined by the decisions of the courts, and is obvious to all persons of any experience in navigation. It would, in all reasonable probability, have prevented the disaster in this case. The evening was clear and starlight, and there was a bright light in the bow of the schooner. There could, therefore, have been no great difficulty in again making the light, after it had disappeared, if the proper steps had been taken by those on board of the steamer. The decree of the court below is affirmed.